## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| Mr. Stanley M. Chesley<br>9005 Camargo Road<br>Cincinnati, Ohio 45243<br>        Petitioner<br>v.<br><br>Angela M. Ford, Esq.<br>Chevy Chase Plaza<br>836 Euclid Avenue, Suite 311<br>Lexington, KY 40502<br><br>    -and-<br><br>Unknown Respondents,<br>possibly over 400 John Doe or Jane<br>Doe or their successors<br>Located at unknown addresses,<br>        Respondents. | : : : : : : : : : : : : : : : : : | Case No. _____<br><br>Judge Ruehlman<br><br><br>**VERIFIED<br>PETITION FOR DECLARATORY<br>JUDGMENT AND INJUNCTIVE<br>RELIEF** |

COMES NOW Petitioner Mr. Stanley M. Chesley ("Chesley"), through the undersigned counsel, who in support of this petition states as follows:

### SUMMARY OF PROCEEDING

Chesley finds himself in a bizarre situation – subject to a judgment issued by a Kentucky court the current total amount of which is unknown and which is owed to a list of approximately 400 persons that has not been updated in over 10 years. Given the virtual certainty that at least one of those persons died or was the subject of a bankruptcy petition, it is true that the judgment against Chesley is in an unknown amount owed to unknown judgment creditors.

Despite those flaws, Respondent Angela M. Ford ("Ford"), on behalf of the judgment creditors (a/k/a the "Unknown Respondents"), has commenced collection efforts including "post-judgment" discovery directed to Chesley. Because Chesley's *res* that Ford targets, Chesley's

1

assets, are in Ohio, the only way Ford can recover from Chesley is by coming to Ohio and invoking this Court's jurisdiction and assistance.

In the same manner, Ford's best means of obtaining information from third parties with whom Chesley has some affiliation is to come to Ohio and invoke this Court's jurisdiction and assistance.

Hence, the filing of this case by Chesley to assure that a modicum of fairness prevails in respect to Ford's collection efforts so that the rights and interests of Chesley and third parties who Ford has targeted with discovery may be properly protected.[1] Absent the relief requested in this action, the rights of Chesley and others will be irreparably harmed.

Accordingly, Chesley seeks a declaration that Ford and any other counsel acting on behalf of the Unknown Respondents cannot register or domesticate into the State of Ohio and then enforce using Ohio courts, subpoenas, sheriffs and laws a Kentucky judgment against Chesley without first disclosing to this Court and Chesley (i) the actual total amount now owed on that judgment, (ii) exactly what persons or entities are currently entitled to collect that judgment and (iii) the amount owed to each specific judgment creditor after credit for the amounts distributed by Ford and amounts retained by Ford as her fee. Ford's failure or refusal to provide this information to this Court and Chesley (a) violates Ohio law, (b) impedes implementation of Ohio public policy imperatives, (c) deprives Chesley of valuable rights, (d) deprives the judgment creditors of their rights, (e) impairs the rights of other third parties from whom, or about whom, Ford seeks information, (f) aids Ford's avoidance of her ethical

---

[1] The post-judgment discovery that Ford has served on Chesley in Kentucky seeks to obtain from Chesley information concerning and belonging to third parties (almost all of whom are Ohio domiciles) in an attempt to circumvent the applicable rules and deprive those third parties of the protections to which they are afforded by Ohio law.

2

obligations to her clients who are the judgment creditors, and (g) could prevent courts in Ohio and Kentucky from making informed decisions on certain issues that may arise in this matter.

## INTRODUCTION

1. Chesley is a resident of Hamilton County, Ohio as are his wife and certain other persons and entities against which Ford has threatened to issue subpoenas and from whom Ford has threatened to seek the recovery of assests. Venue of this matter is appropriate in this Court.

2. Respondent Ford is a resident of the Commonwealth of Kentucky and practicing lawyer in the Commonwealth of Kentucky who represents the plaintiffs in litigation styled *Mildred Abbott et al. v. Stanley M. Chesley, et al.* Boone County Kentucky Circuit Court Case No. 05-CI-00436 (the "Abbott Case"). Some or all of the Abbott Case plaintiffs are Chesley's judgment creditors and are the "Unknown Respondents" herein. Ford has minimum contacts with Ohio consistent with this Court's appropriate exercise of personal jurisdiction over Ford.

3. On October 22, 2014 the Boone County, Kentucky Circuit Court ("Boone Circuit Court") entered a Second Amended Judgment against Chesley in the Abbott Case (the "Chesley Judgment"). The Chesley Judgment incorrectly purports to impose on Chesley joint and several liability with three other individuals who suffered a prior judgment in the Abbott Case. The Chesley Judgment is based solely on the principal of collateral estoppel and holds that the Kentucky Supreme Court decided all the factual issues necessary to establish Chesley's liability to the Abbott Case plaintiffs when the Kentucky Supreme Court considered disciplinary action against Chesley. See Exhibit A. Chesley disagrees with this conclusion.

4. Chesley has exercised his right to appeal the Chesley Judgment to the Kentucky Court of Appeals and Chesley expects the Chesley Judgment to be reversed. Chesley's confidence is based in part on the fact that in 2014 Judge Schrand of the Boone Circuit Court

3

crocheted together Chesley and the Criminal Defendants (defined below) but (i) Judge Wehr of that same court previously said, "[t]he rationale of the previously entered partial summary judgment [against the Criminal Defendants] does not apply to" Chesley and (ii) the Kentucky Court of Appeals agreed when it refused to equate Chesley with the Criminal Defendants in 2011 and (iii) the 2013 Kentucky Supreme Court's *Abbott v. Chesley* decision agreed:

> Appellants also contend that the joint and several liability of CGM [the Criminal Defendants] should extend to Chesley because he acted in concert with CGM. We decline the invitation to do so. . . . Chesley's role in the enterprise clearly differed from that of Cunningham, Gallion, or Mills. The agreement itself seems to treat him differently.

Judge Schrand's decision against Chesley is a clear outlier.

5. Nothing in this Petition or any other document filed herein admits that Chesley agrees with any particular finding of fact and conclusion of law that led to the Chesley Judgment. *Inter alia*, Chesley disputes the Chesley Judgment's holding that he is jointly and severally liable with the Criminal Defendants because the Chesley Judgment arose out a procedural morass wherein Ford and the Boone Circuit Court conflated the issues in a disciplinary matter and those in the Abbott Case, a civil lawsuit where parties are entitled to complete discovery on damages, and a reasoned decision based on the merits; Chesley received neither in the Abbott Case. Instead, Judge Schrand summarily applied collateral estoppel in the Abbott Case.

6. The three other jointly liable judgment debtors (hereinafter the "Criminal Defendants") were accused of federal crimes for their actions that form the basis of the Abbott Case. For that reason, the August 2007 judgment against those three persons in the Abbott Case is referred to herein as the "Criminal Defendants Judgment."

4

## THE JUDGMENT, COLLECTION ACTIVITY AND MONEY DISSIPATED

7. After entry of the 2007 Criminal Defendants Judgment, but prior to the entry of the Chesley Judgment, Ford and her co-counsel collected many millions of dollars from the Criminal Defendants. As a matter of law, the gross amount of those collections must be credited against the Criminal Defendants Judgment, thus reducing the amount of that judgment. Reducing the Criminal Defendants Judgment will simultaneously reduce the amount of the Chesley Judgment since the Boone Circuit Court held Chesley jointly and severally liable for the same $42,000,000 in damages owed by the Criminal Defendants to the Abbott Case plaintiffs.

8. The stated amount of the 2007 Criminal Defendants Judgment is $42,000,000 plus 8% prejudgment interest and 12% post judgment interest.[2] Although entered more than seven years after entry of the Criminal Defendants Judgment, the stated amount of the 2014 Chesley Judgment is also $42,000,000 plus 8% prejudgment interest and 12% post judgment interest.[3] Ford failed to disclose to the Boone Circuit Court the amount collected against the Criminal Defendants Judgment; so the Boone Circuit Court made no adjustment when it entered the stated amount of the Chesley Judgment.

9. Two of the Criminal Defendants, Cunningham and Gallion, were defendants in a criminal case heard by the United States District Court of the Eastern District of Kentucky Criminal Case No. 07-39-WOB (the "Criminal Case"). Ford accepted appointment as the Victims Advocate in the Criminal Case.

---

[2] Chesley's counsel was not involved in the determination of the $42,000,000 amount because it was first determined in a summary judgment motion against the Criminal Defendants not Chesley.

[3] The $42,000,000 amount (i) is a calculation relating to the Criminal Defendants and not Chesley, (ii) is wholly disconnected from any funds Chesley received, and (iii) fails to reconcile the fact that the Kentucky Supreme Court suggested that the maximum judgment to which Chesley would be $6,465,621.87, the "worst case" amount by which Chesley was overpaid in the Settled Case.

10. Upon information and belief, Chesley asserts that Ford squandered some of the funds collected from the Criminal Defendants and said funds were not prudently disbursed, properly accounted for or applied to the Criminal Defendants Judgment. Examples include:

(i) Ford permitted some of the seized assets to be operated by a state court receiver rather than immediately selling those assets and applying the proceeds to the Criminal Defendants Judgment. The receivership operated at a cash flow deficit requiring that other cash payable to the Abbott Case plaintiffs be used to support the receivership. The receivership's use of saleable assets caused those assets to lose value;

(ii) Ford selected a Kentucky lawyer as her co-counsel for collection work on the Criminal Defendants Judgment. Ford now claims that Kentucky lawyer improperly transferred over $2,000,000 to persons that were not Ford, Ford's designees, or the Abbott Case plaintiffs; and

(iii) The Criminal Case victims included 14 known persons who were not Abbott Case plaintiffs. As the Victims Advocate, Ford accepted duties to those 14 persons. To meet her duties to those 14 persons, Ford diverted funds from the Abbott Case plaintiffs into an escrow account for the potential benefit of those 14 persons.

11. The Criminal Defendants Judgment must be reduced by the total gross value of all assets seized from the Criminal Defendants or otherwise acquired or paid on account of the Criminal Defendants Judgment at the time those assets were seized by Ford or her co-counsel regardless of (i) any operating losses suffered by the receivership, (ii) the reduced amount for which those assets were sold after the receivership was terminated or the assets otherwise liquidated, (iii) the alleged loss of any funds caused by Ford's co-counsel, (iv) the diversion of funds from the Abbott Case plaintiffs to persons who were Criminal Case victims but not Abbott Case plaintiffs, or (v) the retention of funds by Ford or her co-counsel.[4] Those legally required reductions should have been applied to the opening $42,000,000 amount before the Chesley Judgment was entered. As applied to Chesley, the $42,000,000 judgment amount is a guess.

---

[4] Neither the Criminal Defendants Judgment nor the Chesley Judgment include an award of attorney fees. So, any funds collected by Ford but not disbursed to the Abbott Case plaintiffs reduce the amount owed on the judgments.

6

12. Two of the Criminal Defendants, Gallion and Cunningham (the "Criminals"), were convicted by the United States District Court for the Eastern District of Kentucky, and ordered to pay restitution to their victims, most of whom are Abbott Case plaintiffs. Forfeiture of certain assets was also ordered in the Criminal Case. Credit against the Criminal Defendants Judgment and therefore the Chesley Judgment must to be given for all amounts paid to the Abbott Case plaintiffs as restitution or from forfeited assets.

13. Despite numerous requests, Ford has refused to provide to Chesley an accurate accounting of all funds paid to the Abbott Case plaintiffs on account of her collection efforts or distributions made in the Criminal Case. Despite numerous requests, Ford has refused to provide to Chesley an accurate accounting of all funds that are legally to be credited against the Chesley Judgment, including any and all amounts, including but not limited to those described above that were not paid to the Abbott Case plaintiffs.

14. Reductions in the Criminal Defendants Judgment will reduce the Chesley Judgment in the same amount because the 2014 Chesley Judgment is based on the amount of the 2007 Criminal Defendants Judgment and the Chesley Judgment is explicitly "joint and several" with the Criminal Defendants Judgment.

15. Despite numerous requests, Ford has failed or otherwise refused to provide to Chesley an accurate accounting of the pre-judgment and post-judgment interest that Ford alleges has accrued and is accruing under the Chesley Judgment. The amount of accrued and/or accruing interest must be adjusted downward each time Ford made assets seizures that reduce the $42,000,000 principal balance of the Criminal Defendants Judgment. The amount of accrued and/or accruing interest must also be adjusted downward to recognize the forfeiture of assets in the Criminal Case and restitution distributions in the Criminal Case.

7

16. The pre-judgment interest rate is one-third lower than the post judgment interest rate (8% versus 12%). Because the Criminal Defendants Judgment was entered in 2007 and the Chesley Judgment was entered in 2014, there is a seven year period when interest accrued on the Criminal Defendants Judgment at the higher post-judgment rate of 12% while, as to Chesley, the pre-judgment 8% interest rate applies. Ford must account for this 7 year discrepancy.

## FORD AVOIDS HER ETHICAL OBLIGATIONS

17. Various filings in the Abbott Case and certain filings in the Criminal Case disagree with respect to the number and identity of the Abbott Case plaintiffs. The "Plaintiffs" in the Abbott Case are the stated beneficiaries of the Chesley Judgment and are real parties in interest in this proceeding – the Unknown Respondents. See Exhibit A. Despite requests, Ford has refused to provide to Chesley (i) an exact number of Abbott Case plaintiffs who are Chesley's creditors, (ii) the name of each current judgment creditor, (iii) an address for each current judgment creditor, and (iv) the amount owed to each current judgment creditor after the distributions of millions dollars to those persons in the Abbott Case and the Criminal Case.[5]

18. For purposes of this Petition, Chesley has listed as respondents herein an unknown number of Jane Doe and John Doe persons or entities (e.g. bankruptcy estates or estates of deceased Abbott Case plaintiffs). Chesley requests that this Court order Ford to disclose the names and addresses of each current judgment creditor so that those persons or entities can be made parties to this action.

19. Public policy in Ohio and Kentucky both promote the settlement of litigation. Without knowing the identity of the Unknown Respondents and the current amount owed

---

[5] Identifying the current judgment creditors and the amount now owed each after all proper credits is the most fundamental element of a valid judgment. The danger of allowing Ford to proceed in Ohio to collect on the Chesley Judgment without first providing this basic information is readily apparent: for example, if Chesley were inclined to consider making any reasonable settlement offers and if some of the Unknown Respondents wanted to accept, to whom would he make that check payable and from whom would he obtain a release or satisfaction of judgment?

specifically to each of them, Chesley cannot consider possibly making any reasonable settlement offers to any of those persons.

20. Ford is ethically obligated to communicate to her clients any settlement offer made by Chesley so that those clients can exercise their individual right to accept or reject that offer. Ford is further ethically obligated to advise her clients individually[6] concerning any settlement offer made by Chesley so that any particular client can knowingly exercise his or her right to accept or reject that offer. Ford's refusal to disclose to Chesley the identity of the Unknown Respondents and the amount owed to each of them protects Ford from the complicated work of communicating settlement offers to specific individual clients and advising each of them individually on the merits of any settlement offer Chesley might make.

21. Ford made several filings in the Criminal Case and in the Sixth Circuit Court of Appeals seeking to keep from Chesley (i) the total value of assets seized on account of the Criminal Defendants Judgment, (ii) the names and addresses of her clients, (iii) the amounts distributed to those clients, and (iv) the amount of money she collected that was not distributed to her clients.

22. Ford's refusal to provide requested information to Chesley (i) impairs Ohio and Kentucky's public policy that favors settlements, (ii) deprives Ford's individual clients of the potential opportunity to receive and consider settlement offers from Chesley, (iii) avoids Ford's obligation to communicate those settlement offers to her clients, (iv) deprives Chesley of valuable rights and (v) deprives courts in Kentucky and Ohio of information they may need to handle certain issues that may arise in connection with this matter.

23. Ford's actions threaten the rights of third parties in Ohio who Ford has stated she intends to depose and whose rights Ford has attempted to violate by seeking their private

---

[6] The Abbott Case is a "mass action" and not a class action proceeding.

9

financial documents and information from Chesley rather than by pursuing the proper procedural mechanism for obtaining the information directly from this third parties – a process that would require Ford to come to Ohio invoke the jurisdiction of the Ohio courts in order to issue subpoenas, and at the same time, afford those third parties the opportunity to protect themselves and their information under the auspices of the Ohio courts.

24. Since Chesley was not a judgment debtor until October 22, 2014, Chesley had no significant opportunity to participate in any of the above-described actions in the Abbott Case or the Criminal Case that created all the necessary adjustments to the amount owed on the Criminal Defendants Judgment and, consequently, the Chesley Judgment.

## FORD THREATENS ACTION THAT WILL CAUSE HARM

25. The *"res"* in this matter, Chesley's assets, if any, are in Ohio not in Kentucky. Chesley does not have significant assets in the Commonwealth of Kentucky that are subject to seizure for collection on the Chesley Judgment. Ford intends to domesticate the Chesley Judgment in the State of Ohio and take collection action on assets located in the State of Ohio.

26. Ford has threatened to issue subpoenas and take depositions of Chesley's wife, Chesley's children, other individuals and "several institutions." Chesley believes and expects that his family members and Ford's other targets will not voluntarily provide information to Ford thereby requiring Ford to issue subpoenas to those targets, many of whom have no presence in Kentucky and are not subject to a subpoena issued by the Boone Circuit Court. Upon information and belief, Chesley asserts that (i) some of the targets of Ford's discovery efforts are not parties to, or currently aware of, the Abbott Case and (ii) some of the assets Ford might attempt to seize are used by, held by or owned by entities who are not parties to, or currently

10

aware of, the Abbott Case. Many of these third parties are Ohio residents, citizens or domiciles who deserve the procedural protections offered by Ohio law.

27. Chesley does not have the ability to secure a supersedeas bond in the amount of $42,000,000, plus millions in accrued interest, the stated amount of the Chesley Judgment.

28. If any money is owed by Chesley to the Abbott Case plaintiffs, Chesley believes that an accurate calculation of the remaining amount owed on the Chesley Judgment may substantially reduce the Chesley Judgment for the reasons described above. Chesley does not know and cannot estimate the amount that remains owed on account of the Chesley Judgment. Knowing the current amount owed on the Chesley Judgment is important because, *inter alia*, that amount is relevant (a) to any consideration by a Kentucky court of requirements that might be imposed if Chesley seeks a stay of enforcement of the Chesley Judgment while his Kentucky appeal is pending and (b) to limitations this Court might impose on Ford to insure that her collection efforts do not attach assets in excess of the amount truly owed on the Chesley Judgment. Ford's refusal to disclose the current total amount of the Chesley Judgment may impair judicial decision making in Kentucky and this Court.

29. Chesley is confident his Kentucky appeal of the Chesley Judgment will be successful. Thereafter, any collection activity by Ford against Chesley will have to be reversed including the return of assets to innocent third parties from whom Ford may seize assets. The temporary loss of seized assets may cause significant harm to the innocent third-parties who are the subject of Ford's collection activity.

WHEREFORE, Petitioner Stanley M. Chesley prays that the Court:

A. Declare that before Respondents take any action in the State of Ohio to enforce the Chesley Judgment, Petitioner Stanley M. Chesley is entitled, at a minimum, to know and that

ELECTRONICALLY FILED 01/06/2015 14:55 / IFI / A 1500067 / CONFIRMATION NUMBER 383362

Respondent Ford must immediately disclose to this Court and Chesley (i) the name, address and amount owed to each of Chesley's current judgment creditors and (ii) the exact current amount owed on the Chesley Judgment in the unexpected event the Chesley Judgment is affirmed;

B. Declare that Petitioner Stanley M. Chesley is entitled to know and that Respondent Ford must immediately disclose to Chesley (i) how much money and the value of assets seized under the authority of the Criminal Defendants Judgment, any assets forfeited in the Criminal Case and any restitution paid in the Criminal Case, (ii) when any assets were seized or forfeited and any restitution payments were made so that Chesley can check the accuracy of Ford's pre-judgment and post-judgment interest calculations, (iii) the amount collected by Ford and not distributed to her clients, and (iv) the total amount distributed to each of the Unknown Respondents in both the Settled Case and the Abbott Case, after reduction for Ford's 40% fees and Ford's expenses;

C. Enjoin Respondent Angela M. Ford, the Unknown Respondents and any other person acting on behalf of the Unknown Respondents from taking any action to collect the Chesley Judgment in the State of Ohio until 90 days after Chesley has received all of the information that this Court declares Chesley is entitled to receive;

D. Enjoin Respondent Angela M. Ford, the Unknown Respondents and any other person acting on behalf of the Unknown Respondents from registering or domesticating the Chesley Judgment in Ohio and attempting to issue subpoenas or any other discovery to parties in Ohio, except for Chesley, until 90 days after Chesley has received all of the information that this Court declares Chesley is entitled to receive; and

E. Enjoin Respondent Angela M. Ford, the Unknown Respondents and any other person acting on behalf of the Unknown Respondents, from destroying any documents relevant

ELECTRONICALLY FILED 01/06/2015 14:55 / IFI / A 1500067 / CONFIRMATION NUMBER 383362

to any of the issues described in this Petition or Chesley's other filings made simultaneously herewith. Chesley submits that this relief is required due to Ford's demonstrated efforts to hide the information sought by Chesley.

## VERIFICATION

Petitioner Stanley M. Chesley swears or affirms as follows: (1) I am over eighteen years old and have never been declared mentally incompetent; (2) I have personal knowledge of the facts set forth in the above-written Verified Petition For Declaratory Judgment And Injunctive Relief (the "Petition"); (3) I am the judgment debtor who is the target of the Chesley Judgment described in the Petition, (4) to the best of my knowledge and belief, the facts set out in the Petition are true and correct.

_____
Stanley M. Chesley

Sworn to, and subscribed, in my presence on January 6, 2015 by Stanley M. Chesley who is known to me.

Mary S. Fleming
Notary Public, State of Ohio
My Commission Expires 08-16-2019

_____
Notary public, State of Ohio
My commission expires on 8/16/2019

### SIGNATURE AND APPEARANCE OF PETITIONER'S COUNSEL

Respectfully submitted,

/s/ Vincent E. Mauer
Vincent E. Mauer (0038997)
FROST BROWN TODD LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, Ohio 45202
513-651-6785
Fax 513-651-6981
vmauer@fbtlaw.com

Sheryl G. Snyder, Esq.
FROST BROWN TODD LLC
400 West Market Street
Suite 3200
Louisville, KY 40202
ssnyder@fbtlaw.com